IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RICKEY DALE BENEUX                                                               PLAINTIFF


v.                              CASE NO.        13-2032


CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                DEFENDANT

### MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.  Procedural Background:

The plaintiff filed an applications for DIB on May 6, 2010 & SSI on June 1, 2010, alleging an onset date of December 31, 2008, due to plaintiff's Memory Loss, Neck Problems and Anxiety (T. 199). Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on August 23, 2011. Plaintiff was present and represented by counsel. At the time of the administrative hearing, plaintiff was

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

42 years of age and possessed a GED.  The Plaintiff had past relevant work ("PRW") experience as a factory worker and forklift driver.  (T. 200).

On January 6, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's mild degenerative disc disease, fibromyalgia, mood disorder, anxiety disorder and polysubstance dependence did not meet or equal any Appendix 1 listing.  T. 9-10.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform light work with additional restrictions.  T. 11.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could  perform the requirements of representative occupation such as machine tender and assembly worker.  T. 16.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary."  *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

The court has reviewed the Briefs filed by the Parties, the Transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, the medical records, and relevant administrative records and finds the ALJ's decision is supported by substantial evidence.

**A.  Severe Impairment:**

The Plaintiff first contends that the ALJ failed to consider his Thoracic Outlet Syndrome severe. (ECF No. 12, p. 11). A "severe impairment is defined as one which 'significantly limits

[the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). If the impairments result in no more than minimal functional limitations, the impairments are not severe. *Pepper ex rel. Gardner v. Barnhart* 342 F.3d 853, 854 (C.A.8 (Mo.),2003); Social Security Ruling 96-3p. The claimant has "the burden ... of showing ... that [s]he has a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5, 96 L.Ed.2d 119 (1987). *Riley v. Shalala* 18 F.3d 619, 621 (C.A.8 (Ark.),1994)

The only mention of Thoracic Outlet Syndrome occurs in a note from the Wellness Clinic of Roland Oklahoma on November 4, 2010. (T. 400). It is unclear who completed this "note" but it is reflected in the "Doctors Notes" section. According to the Mayo Clinic "Thoracic outlet syndrome is a group of disorders that occur when the blood vessels or nerves in the space between your collarbone and your first rib (thoracic outlet) become compressed. This can cause pain in your shoulders and neck and numbness in your fingers."[2] Also, according to the Mayo Clinic "[T]reatment for thoracic outlet syndrome usually involves physical therapy and pain relief measures. Most people improve with these approaches. In some cases, however, your doctor may recommend surgery." (Id.). In this instance the treating physician made no change in his treatment plan or medication and no surgery was recommended (T. 400).

The only physician who reported clinical findings regarding Plaintiff's hand use was Marvin Kirk, M.D., who examined Plaintiff on July 12, 2010 (Tr. 338-343). Plaintiff reported no neurological symptoms or hand use problems to Dr. Kirk (Tr. 338, 340). On examination, Dr.

---

[2]See http://www.mayoclinic.org/diseases-conditions/thoracic-outlet-syndrome/basics/definition/CON-20040509

Kirk reported that Plaintiff had normal grip strength and could pick up a coin or hold a pen and write (Tr. 342).

The court also notes that when the Plaintiff filed his application for disability he only claimed memory loss, neck problems, and anxiety. (T. 199). The fact that the plaintiff did not allege the impairment as a basis for his disability in his application for disability benefits is significant, even if the evidence of the impairment was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001).

The court finds no error in the ALJ's decision not to list Thoracic Outlet Syndrome as a severe impairment.

**B.  Residual Functional Capacity:**

The Plaintiff next contends that the ALJ erred in his RFC determination. (ECF No. 12, p. 12).  The ALJ determined that the Plaintiff could:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can only occasionally climb ramps and stairs and can never climb ropes, ladders and scaffolds. He can only occasionally balance, stoop, kneel, crouch and crawl but cannot perform work overhead. He must avoid concentrated exposure to extreme cold and must avoid all exposure to hazards including no driving as a part of work. Non-exertionally, the claimant is able to perform work in which interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and use of little judgment, and the supervision required is simple, direct and concrete. (T. 11).

 RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404. 1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545

and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 *citing Lauer v. Apfel*, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

**1. Credibility**

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)). Assessing and resolving credibility issues is a matter that is properly within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (court will

not substitute its own credibility opinion for that of the ALJ).  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  The court should , " defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Perks v. Astrue* 687 F.3d 1086, 1091 (C.A.8 (Ark.),2012). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

      The ALJ noted the Plaintiff's drug seeking behavior. A claimant's misuse of medications is a valid factor in an ALJ's credibility determinations. See *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir.1995) (observing that claimant's "drug-seeking behavior further discredits her allegations of disabling pain"). *Anderson v. Barnhart* 344 F.3d 809, 815 (C.A.8 (Iowa), 2003).

      The court also notes that the Plaintiff first saw Dr. Hoang on April 24,  2008 for low back pain that began nine days prior. (T. 429). In September, when he was treated by Dr. Terry Holt, the Plaintiff stated that he hurt his back at work in February 2008. (T. 306). Notwithstanding his injury in February 2008 the Plaintiff had his highest wage production of his working life during that year. (T. 167).  In *Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir.2001), the court stated "[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility."

      In his application for benefits the Plaintiff stated that his stopped working on March 31, 2009 because of his memory loss, neck problems and anxiety. (T. 199).  In an undated medical record that makes reference to treatment in September 2008 the history notes that "he just got laid off" and therefore could not afford his medication. (T. 519). The Plaintiff appears to have

worked at Dillmeier Enterprises during 2008 earning $22,651.88 (T. 171).  After being laid off at Dillmeier the Plaintiff drew Unemployment Benefits of $2,796 for the 2nd Quarter (T. 166), 3rd Quarter, 4th Quarter of 2009 (T. 165) and the 1st Quarter of 2010. In the 2nd Quarter of 2010 his Unemployment Benefits were reduced to $1,491 and evidently ceased at that time (T. 164). The Plaintiff also did temporary work through TEC the Employment Company during the third quarter of 2009 earning $662. (T.  163).

The acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim of disability. *See Cox v. Apfel*  160 F.3d 1203, 1208 (C.A.8 (Mo.),1998) *citing Salts v. Sullivan*, 958 F.2d 840, 846 n. 8 (8th Cir.1992).  This coupled with the Plaintiff's temporary work after the alleged onset date detracts from the Plaintiff's credibility. Absent a showing of deterioration, working after the onset of  an impairment is some evidence of an ability to work. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir.2005).

This court concludes that, because the ALJ gave several valid reasons for the ALJ's determination that Plaintiff was not entirely credible, the ALJ's credibility determination is entitled to deference, *see Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir.2012).

**2.  RFC Evaluation**

There were conflicting RFC Assessments between the Plaintiff's treating physicians and the Consultive Evaluations.

The ALJ noted that while Plaintiff began treatment at the Wellness Center in February 2009 for a history of back injury, the "record documents the claimant underwent no further objective testing, physical therapy or any other treatment," but was nevertheless "prescribed a regimen of strong narcotic pain killers . . . month after month through at least

October 2011" (Tr. 13). While being consistently prescribed these medications by Wellness Center personnel, Plaintiff also sought pain medications from N. Van Hoang, M.D., in August 2009, the St. Edward Mercy Medical Center emergency room in June 2010, and the Summit Hospital emergency room in June 2010, with varying results (Tr. 13, 414, 419-20, 427, 448).

In 2005 the Plaintiff's treating physician refused to continue to treat the Plaintiff because he was acting "aggressive, at time incoherent with slurred speech" (T. 517).  On June 26,  2010 the Plaintiff presented to Summit Medical Center claiming he had fallen four days previously while chasing his dog and injured his back. (T. 419). No treating physician or medication was listed by the Plaintiff. (Id., 420). The Plaintiff drug test were abnormal for Benzos, hema, Opiates and RBC (T. 418, 420) and the Plaintiff was diagnosed with Drug Seeking Behavior and Drug Abuse. (Id.). In July 2010 the Plaintiff was treated at Saint Edwards Mercy Medical Center ER for "possible OD on Rx meds. Methadone unknown amounts" (T. 433).  The medical records reflects that the Plaintiff was "lethargic & confused" and that his prescription had been "filled on Thursday-most medication taken (unreadable) (T. 433).

The Plaintiff's treating physicians at the Wellness Clinic never make any reference to the Plaintiff's drug seeking behavior and there records consistently indicate that they find no drug abuse. The Plaintiff testified that he did not undergo examinations by the Wellness Clinic staff, "they just talk to me" (Tr. 52). This is consistent with Plaintiff's Wellness Center records, which contain no significant examination findings over the course of Plaintiff's treatment from February 2009 through November 2011 (Tr. 460-480, 488-507).

A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005). We will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. at 920-21 (internal quotations omitted). "When one-time consultants dispute a treating physician's opinion, the ALJ must resolve the conflict between those opinions." *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir.2000). The court finds that the ALJ set forth a proper analysis to discount the opinions of the Plaintiff's treating physicians as to Plaintiff's RFC.

The ALJ properly rejected Dr. Friedl's and Dr. Kirk's opinions that Plaintiff was disabled, noting the inconsistency with Dr. Kirk's clinical findings showing that Plaintiff had substantially normal findings and was physically limited only in his ability to perform unusual activities such as squatting and walking on heels and toes, as well as Dr. Faucett's report demonstrating that Plaintiff retained the mental capacity for unskilled work (Tr. 13-14, 340-342, 360). *See Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (it is the ALJ's function to resolve conflicts among the various treating and examining physicians). The ALJ's resolution of this conflicting evidence was supported by uncontradicted medical evidence and properly within his discretion as the finder of fact. *See Hutton v. Apfel*, 175 F.3d 651, 656 (8th Cir. 1999) (ALJ's duty to resolve conflicts in the evidence); *Brachtel v. Apfel*, 132 F.3d 417, 420 (8th Cir. 1997) (resolution of conflicting evidence is within the province of the ALJ).

### C.  Vocational Expert

Testimony from a vocational expert ("VE") based on a properly-phrased hypothetical question constitutes substantial evidence.  *See Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996); cf. *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994) (when hypothetical question does not encompass all relevant impairments, VE's testimony does not constitute substantial evidence to support the ALJ's decision). The ALJ's hypothetical question needs to "include only those impairments that the ALJ finds are substantially supported by the record as a whole."  Id. (citing *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993)); see also *Morse v. Shalala*, 32 F.3d 1228, 1230 (8th Cir.1994).   A hypothetical need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments.  *Roe v. Chater*, 92 f.3d 672, 676 (8th Cir. 1996).

The ALJ's hypothetical to the vocational expert (VE) accounted for all of Plaintiff's proven impairments, *see Buckner v. Astrue*, 646 F.3d 549, 560–61 (8th Cir.2011) (VE's testimony constitutes substantial evidence when it is based on hypothetical that accounts for all of claimant's proven impairments; hypothetical must include impairments that ALJ finds substantially supported by record as a whole).

### IV.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice

Dated  this 7th day of January 2014.

*/s/ J. Marschewski*

HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE